LILES, WOODIE A., Associate Judge (Retired).
The employer/carrier appeals from a worker’s compensation ruling that claimant suffered a compensable injury and is entitled to a seventy percent (70%) permanent partial disability of the body as a whole. We affirm. Since we agree with the Deputy Commissioner’s findings of fact, we adopt and include them in the opinion of this Court as follows:
The Claimant is 65 years old with a fifth grade education. In the past, he has been a farmer, a worker in a sawmill, a bread truck driver, and he managed a furniture store for 13 years. He has worked for the City of Bonifay for the past 14 years. At the time of his alleged *792 accident, he managed a sewage treatment plant. The Claimant is a diabetic. Except for brief periods, he has been able to control this condition for the past 24 years.
On January 30, 1978, the Claimant and his fellow employee, Tommy Pate, were working on a newly installed sump pump at the treatment plant. They were using a PVC pipe cleaner marketed under the brand name of Plum-O, PVC-ABS Cleaner. According to the label on the can, the cleaner contained methyl-ethyl-ketone. While using this cleaner, the Claimant felt a burning sensation in his throat and eyes. He removed himself from this environment. He experienced a weakening sensation. He continued to work that day but went home early because he did not feel well. At home that night, he spit up blood and his nose began to bleed. Initially he ignored the nose bleed but, because of his sensation of weakness, did not return to work the next day. His nose bleed persisted and he finally went to the hospital for treatment. After several episodes of bleeding, he saw Dr. Grace who is his regular family physician. Dr. Grace hospitalized Claimant with a diagnosis of an acute allergic reaction. After some inquiry by Dr. Grace, the Claimant recalled the episode with the Plum-0 and showed the label from the can to the doctor.
Upon noting that the Plum-0 contained ketones, Dr. Grace became convinced that exposure to this substance was the cause of his bleeding episode. As explained by Dr. Grace, a diabetic is unable to metabolize carbohydrates. As a result, the body accommodates this failing with an alternate chemical reaction which results in a production of ketone bodies which accumulate. This accumulation produces an acidotic condition in the blood stream. Thus, the diabetic having an abnormal ketone level in his blood stream is particularly allergic to ketones. Not only did the exposure to Plum-0 cause the Claimant’s nose to bleed, but it also caused his diabetic condition to become uncontrollable. Dr. Grace states that the Claimant cannot return to work in an industrial environment. His exposure has left him in a weakened condition which restricts his activities. .. .
The Claimant testifies to a general weakness which did not exist prior to his exposure to Plum-O. Before the episode, he states he could do anything he wanted to do. Now he states that he has difficulty walking more than two city blocks. He is unable to tend his garden. The Claimant returned to work on March 20, 1978, and he worked until July 15, 1979, when he was hospitalized for eye surgery which was not related to his exposure to the Plum-O. He has not worked since although he feels he might be able to do part-time work with the Green Thumb program which hires handicapped people apparently to help beautify the City. He could work 20 hours per week at $2.95 per hour.
Considering the nature of the methyl-ethyl-ketone and its toxic effect on one with a pre-existing diabetic condition, we hold that the record contains competent, substantial evidence to support a finding of causal relationship between claimant’s exposure at work and the claimant’s nose bleeds and general physical deterioration. The toxic effect of this exposure to the methyl-ethyl-ketone occurred suddenly and was related to an identifiable incident, thus satisfying the statutory requirements of an accident. Section 440.02(18), Florida Statutes; Smith v. Florida Department of Agriculture & Consumer Services, IRC Order 2-3425 (May 3,1978), cert. denied 364 So.2d 884 (Fla.1978). Further, while the evidence reveals that the claimant’s eye surgery was the immediate precipitating cause of his ceasing to work, it also clearly indicates a man in substantial physical decline well before the eye surgery. Thus, we agree with the Deputy Commissioner and would not conclude, as Appellants urge, that his inability to continue working at the sewage treatment plant is due to his eye surgery.
Appellants also urge that the claimant has not made an adequate job search so *793 as to justify an award of permanent partial disability benefits in excess of Dr. Grace’s anatomical impairment rating. Although the evidence regarding the claimant’s employment search discloses a minimal effort, we think that this effort, coupled with his present condition, his advanced age, educational and work background, is sufficient to shift the burden to Appellants to prove the availability of other job opportunities. See, Buro v. Dino’s Southland Meats, 354 So.2d 874 (Fla.1978); Simmons v. Criswell, IRC Order 2-3054 (October 26, 1976). Since they have not done so, the order must be affirmed on this point.
Accordingly, the order appealed from is
AFFIRMED.
WENTWORTH and JOANOS, JJ., concur.